## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of **)** <br> **JAMES R. SILVER, as owner of )** <br> **The M/V SEA-RENITY NOW (O.N. 1212716), )** <br> **a 1963 (2021) Bertram 31 Flybridge Cruiser )** <br> **Sport Fisherman, for Exoneration from )** <br> **or Limitation of Liability. )** <br> **)** | **Civil Action No. 1:22-cv-11833-IT** |

### CLAIMANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Now Come the Claimants, Mattapoisett Boatyard, Inc., Kaiser Yachts, LLC, and MBY Realty Trust (collectively "Mattapoisett Boatyard", "MBY", or "Claimant"), by and through their undersigned counsel, Holbrook & Murphy, and respectfully move this Honorable Court to Dismiss the Petitioner James R. Silver's ("Petitioner" or "Plaintiff") Complaint at Docket No. 1 and Petitioner's Counterclaims at Docket No. 44 for lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### INTRODUCTION

Petitioner James R. Silver ("Petitioner" or "Plaintiff") filed his Complaint seeking exoneration or to limit the amount of his liability to $0.00, from claims arising out of an August 19, 2022 explosion and fire that originated on the Petitioner's Vessel while the Vessel was on land, stored on blocks, inside a building at the Mattapoisett Boatyard.

The August 19, 2022 explosion and fire ("Incident") giving rise to the Petitioner's Complaint and the resulting damage occurred entirely on dry land. The Incident did not occur on navigable waters, the Vessel where the explosion and fire originated had been removed from navigation, and the Incident does not bear a significant relationship with traditional maritime activity to invoke this Honorable Court's admiralty jurisdiction.

The Petitioner asserts that this Court has jurisdiction pursuant to 46 U.S.C. §§ 30501 et seq., Supplemental Admiralty Rule F, Rule 9(h) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1333. *Docket No. 1* at ¶ 1. However, the limited intended purpose of limitation proceedings renders such a proceeding inapposite for a case of this nature, the Petitioner's Claim for Limitation or Exoneration from Liability should be dismissed because this Court lacks subject matter jurisdiction.

## **FACTUAL BACKGROUND**

On or about August 3, 2022, the Petitioner's Vessel experienced issues with, *inter alia*, its fuel system, including but not limited to its fuel tank and fuel. *Exhibit 1 - Declaration of David R. Kaiser* ("Kaiser Dec") at ¶ 8. On or about August 10, 2022, the Petitioner caused the inoperable Vessel to be towed to the Mattapoisett Boatyard for repairs. *Id.* at ¶ 9. At Mattapoisett Boatyard, the Vessel was removed from the water and stored on blocks on land for approximately one (1) week before being positioned inside a building at Mattapoisett Boatyard. *Id.* at ¶ 10.

Mattapoisett Boatyard's initial inspection of the Vessel revealed that the Vessel's fuel tank was degraded, and that the Vessel's fuel tank needed to be to be replaced to return the Vessel to an operational status. *Id.* at ¶ 11. On or about August 19, 2022, an explosion and fire originated on the Vessel while it was on land, stored on blocks, inside a building at Mattapoisett Boatyard. *Id.* at ¶ 12. At the time of the Incident, the Vessel was approximately eighty (80) feet from the nearest navigable waters inside a building at Mattapoisett Boatyard. *Id.* at ¶ 13.

Prior to the Incident, the Vessel had been significantly deconstructed in order to replace the Vessel's fuel tank and to return the Vessel to an operational status. *Id.* at ¶¶ 14-15. The Vessel's fuel tank was mopped out, the Vessel's fuel fill lines were removed, the Vessel's fuel

tank supply lines were removed, the Vessel's fuel tank vent hose was removed, the fuel supply lines from the Vessel's compromised fuel tank to the Vessel's engines were removed, and a roughly eight (8) foot by four (4) foot section of the Vessel's deck was cut out to access the Vessel's compromised fuel tank. *Id*.

In order to effectuate the fuel tank replacement, a custom fuel tank needed to be fabricated for the Vessel. *Id.* at ¶16. Mattapoisett Boatyard engages third-party contractors for fuel tank fabrication. *Id.* at ¶ 17. From the date of the Incident it would have approximately taken an additional eight (8) weeks to replace the Vessel's fuel tank and return the Vessel to an operational status. *Id.* 24.

The August 19, 2022, explosion, fire, and resulting damage occurred entirely on land. *Id.* at ¶ 25. The explosion and fire that originated on the Petitioner's Vessel destroyed and/or damaged eight (8) buildings, forty-seven (47) cars, at least three (3) houses in Mattapoisett Boatyard's vicinity, twenty-eight (28) boats stored on land at Mattapoisett Boatyard., and machinery, equipment, tools, sails, motors, rigging, personal property, and real property, stored or located on land or in buildings at the Mattapoisett Boatyard. *Id.* at ¶¶ 26-29, 31. The explosion and fire that originated on the Petitioner's Vessel did not destroy and/or damage ***any*** vessels in the water at Mattapoisett Boatyard. *Id.* at ¶ 30; *See Exhibits 1 and 2 filed in support of the Declaration of David Kaiser.*

## **LAW AND ARGUMENT**

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a case where the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is axiomatic that subject matter jurisdiction can be reviewed at any time: "[w]henever it appears by suggestion of parties or

otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Rather, the court must presume that federal jurisdiction is lacking until established otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). The burden is on the party asserting federal jurisdiction to demonstrate that such jurisdiction exists. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion[…]." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Such materials include affidavits. *Id*. at 288 (*citing White v. Comm'r of Internal Revenue*, 899 F. Supp. 767, 771 (D. Mass. 1995)). The Court may also look beyond the pleadings to any evidentiary materials submitted by the parties to determine whether it has jurisdiction. *Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016).

I. **Admiralty Jurisdiction Must Exist In Order For One To Avail Themselves To The Limitation Of Liability Act (46 U.S.C. §§ 30501)**

Federal admiralty jurisdiction pursuant to 28 U.S.C. 1333(1) is required to maintain a limitation of liability action. The Incident did not occur on navigable waters, the resulting damage was not caused by a Vessel on navigable waters, and the Incident does not bear a significant connection to traditional maritime activity.

a. **The Fire did not occur on navigable waters.**

The Incident giving rise to the Petitioner's Complaint did not occur on navigable waters and therefore fails the admiralty jurisdiction locality test.

The general test for admiralty tort jurisdiction requires a party seeking to invoke that jurisdiction to "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Specifically,

> [a] court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved[ ]" to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows "a substantial relationship to traditional maritime activity."

*Id*. (*quoting Sisson v. Ruby*, 497 U.S. 358, 363-65 & n.2, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)) (internal citations omitted).

If a tort occurs *on navigable waters,* the locality test is usually satisfied and admiralty jurisdiction applies. *Executive Jet*, 409 U.S. at 253. In applying the locality test, the court determines if the tort *occurred on navigable waters* or if the injury suffered on land *was caused by a vessel on navigable waters. Graubert,* 513 U.S. at 534. (emphasis added).

In the instant case, even the Petitioner recognizes that the August 19, 2022 explosion, fire, and resulting damages occurred entirely on land and not on navigable waters. *See Docket No. 1 at ¶ 16.* The Petitioner's Vessel, where the explosion and fire originated, had been out of the water for eight (8) days prior to the Incident. It is undisputed that the August 19, 2022 explosion, fire, and resulting damage occurred while the Vessel was on land, stored on blocks, inside a building at Mattapoisett Boatyard.

Courts have repeatedly held that no admiralty jurisdiction exists in cases involving fires on vessels stored on land. In *David Wright Charter Service v. Wright*, 925 F.2d 783 (4 Cir. 1991), the Fourth Circuit Court of Appeals upheld the District Court's dismissal of a case finding no admiralty jurisdiction when the vessel was located 75 feet from navigable waters. Likewise,

in *Omaha Indemnity Co. v. Whaleneck Harbor Marina, Inc*., 610 F.Supp. 154 (E.D.N.Y. 1985),

the court held admiralty jurisdiction was not present when tort occurred on a vessel that was in

dry storage. In *The Complaint of Dickenson*, 780 F.Supp. 974 (E.D.N.Y.1992), the court held

that admiralty jurisdiction was not present when a vessel was in drydock 50 feet away from

navigable waters. *See also Latin American Property & Casualty Co*., 887 F.2d 1477 (11 Cir.

1989) (vessel fire occurring while vessel stored on land at marina did not create admiralty

jurisdiction); *Florio v. Olson*, 129 F.3d at 680 (1st Cir. 1997) (injury on dry dock did not occur

on navigable water); *In Re Carter*, 743 F.Supp.2d 103, 107 (D. Conn 2010) (finding that the

locality test cannot be met for a fire that began on land and occurred *solely* on land)(emphasis in

the original); *Lewis Charters, Inc.*, v. *Huckins Yacht Corporation* 871 F.2d 1046 (11th Cir. 1989)

(holding that a boat stored in the wet berth of a paint facility "was certainly withdrawn from

navigation").

 In addition to the tort not occurring on navigable waters, there can be no credible

argument that the Incident suffered on land was caused by a vessel on navigable waters. In fact,

at the time of the Incident, the Vessel was approximately eighty (80) feet from the nearest

navigable waters inside a building at Mattapoisett Boatyard. *Kaiser Dec at ¶ 13*. Moreover, no

damages were sustained on the navigable waters. *Id. at ¶ 30.*

 Here, neither the Incident nor any of the resulting damage occurred "on navigable

waters" and that the damage sustained on land was *not "*caused by a vessel on navigable waters."

Therefore, the locality test is not met, a requirement to maintain federal admiralty jurisdiction.

  **b.**  **The Vessel was removed from navigation.**

 Courts have routinely found that vessels undergoing repairs on land did not satisfy the

situs test for admiralty jurisdiction. *See Sea Vessel, Inc. v. Reyes*, 23 F.3d 345 at fn. 8 (11th Cir.

1994) *citing David Wright Charter Serv. v. Wright*, 925 F.2d 783, 784 (4th Cir.1991) (holding that a vessel "placed on blocks to undergo repairs in a shed located 75 feet from the water" did not "satisfy the situs test for admiralty jurisdiction"); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1053 (11th Cir.1989) (holding that a boat stored in the wet berth of a paint facility "was certainly withdrawn from navigation"); *Latin American Property & Casualty Ins. Co. v. Hi-Lift Marina, Inc.*, 887 F.2d 1477, 1480 (11th Cir.1989) (relying on Lewis and concluding that a vessel in storage does not satisfy the nexus requirement); *In re Complaint of Dickenson*, 780 F.Supp. 974, 975 (E.D.N.Y.1992) (holding no admiralty jurisdiction where a vessel had undergone repairs 50 feet from the water). *Compare with American Eastern Development Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 124 (5th Cir. 1979) (finding fully operational vessels in "dry storage" that were in and out of the water regularly were not "withdrawn from navigation.")

The instant case is distinguishable from *American Eastern.* In *American Eastern*, vessels in dry storage were damaged in a fire. 608 F.2d 123 (5th Cir. 1979). The court found that the case arose in admiralty. *Id.* The court in *American Eastern* reasoned that the vessels in dry storage that were damaged in the fire were not withdrawn from navigation because they "…may be readily taken in and out, as an alternative to tying their boats up at docks or moorings. The boat is readily accessible to the water and can be quickly and easily launched or brought ashore to the storage shed..." *Id.* at 124.

In this case, the Vessel was withdrawn from navigation at the time of the explosion and fire. When the explosion occurred the Vessel was significantly dismantled and would be out of service on dry land for an additional eight (8) weeks. *Kaiser Dec* at ¶ 25. When the explosion

and fire started on the Vessel is was stored on blocks, on land, inside a building, eighty (80) feet from the closest navigable waters. *Id. at ¶ 12, 13.*

After the Vessel arrived at Mattapoisett Boatyard, it was determined that the Vessel's fuel was degrading the fiberglass of the Vessel's fuel tank. *Id. at  ¶ 11.* The degraded fiberglass had severely affected the Vessel's fuel system including the fuel filters, fuel lines and the Vessel's engines. *Id. at ¶¶ 15-16.* It was determined that the Vessel required an entire fuel tank replacement to return it to an operational status. *Id. at  ¶ 11.*

In order to complete the extensive fuel tank replacement the Vessel would have been out of the water for an additional eight (8) weeks from the time of the fire. *Id.* at 25. The fuel tank replacement is an extensive work order. *See Id. at ¶¶ 16-25.* In order to replace the fuel tank Mattapoisett Boatyard needed to remove the tank from the Vessel. *Id. at ¶ 16.* Removing the tank from the Vessel included, *inter alia*, cutting an eight (8) foot by four (4) foot section of the Vessel's deck out to access the Vessel's tank. *Id.* Once MBY could access the Vessel's fuel tank, the entire fuel system, including fuel fill lines, fuel supply lines, and fuel vent lines needed to be removed. *Id.*

There was significant work to be done once the fuel tank was removed. *Id. at ¶¶ 16-24* Significantly, a custom fuel tank needed to be fabricated. *Id. at ¶ 16.* MBY engages a third-party contractor to fabricate custom fuel tanks. *Id. at ¶ 17.* Measurements of the old tank and void need to be taken and drawings prepared before fabrication can start. *Id.* at ¶ 16. No measurements for the custom tank were taken at the time of the incident and fabrication of the custom tank had not commenced. *Id.* at ¶¶ 18-19. Historically, the third-party contractor has been able to measure, fabricate, and deliver a custom fuel tank in two (2) weeks. *Id.* at ¶ 20.

Once the custom fuel tank arrived at MBY, significant work would be required to complete the fuel tank replacement. *Id.* at ¶¶ 21-24. The custom tank needs to be dry fitted into the Vessel. *Id. at ¶ 22.* After dry fitting, the tank is removed and MBY would need to install blocks for mounting the fuel tank. *Id.* After the mounting blocks were in position, then the tank could be placed into the Vessel and secured. *Id.*

After securing the tank, MBY would then re-connect the entire fuel system, including fuel fill lines, fuel supply lines, fuel vent lines, and a grounding wire. *Id.* Once the entire fuel system was back online, extensive work would including the re-construction of the eight (8) foot by four (4) foot section of the Vessel's deck that was removed to access the fuel tank would commence. *Id.* at 23. Reconstructing the large section of deck requires building a frame to install over the fuel tank to support the new deck and laying down fiberglass cloth and resin to slowly build up the deck's strength. *Id.* After the extensive fiberglass work was done, the Vessel's deck would be painted. *Id.*

In total, it would have taken MBY approximately eight (8) weeks, from the date of the fire, to fully complete the tank replacement and associated repairs. *Id. at ¶ 24.*

The Plaintiff's Vessel was withdrawn from navigation at the time of the fire, it had been on shore on blocks for over one (1) week before the explosion and, if the explosion and fire did not occur, it would have remained on dry land for an additional eight (8) weeks.

c. **The Fire does not have a significant relationship to traditional maritime activity.**

As outlined*, supra*, the Claim fails to meet the "location" prong of the admiralty jurisdiction test, but the "connection with maritime activity" is similarly lacking.

Two inquiries are implored when applying the nexus test. *Sisson v. Ruby*, 497 U.S. 358 (1990). "(1) did the incident have a 'potentially disruptive impact on maritime commerce?' and

(2) does a 'substantial relationship' exist 'between the activity giving rise to the incident and traditional maritime activity?" *Id.; See also Jerome B. Grubert v. Great Lakes Dredging & Dock Co.*, 513 U.S. 527, 534 (1995).

Court's addressing land based fires involving vessels have ruled that the nexus test has not been satisfied. The Eleventh Circuit, in *Lewis Charters, Inc.*, v. *Huckins Yacht Corporation* dealt with a nearly identical situation to the instant case. 871 F.2d 1046 (11th Cir. 1989). In *Lewis,* vessels were stored at a marina's paint facility awaiting repairs. *Id.* A fire started, destroying two (2) vessels and the paint facility. *Id.* A vessel owner filed a Complaint for Limitation of Liability and the marina moved to dismiss for lack of subject matter jurisdiction. *Id.* The district court granted the marina's motion to dismiss and the Eleventh Circuit affirmed. *Id.* The *Lewis* court stated that while the boats that were destroyed were "obviously maritime vessels" and the marina's paint facility "related to maritime activity because it serviced maritime vessels," that the vessels were not engaged in navigation or near other vessels navigating the waters… *Id.* The *Lewis* court further stated:

> We fail see how resolution of this case according to admiralty law will have any potential impact on maritime commerce. The boats were not in proximity to other vessels either in or serving the flow of commerce. There is no discernable relationship between the tort committed here and "traditional maritime activities, involving navigation or commerce on navigable waters."

*Id.* (quoting Executive Jet, 409 U.S. at 256, 93 S.Ct. at 498; Foremost, 457 U.S. at 674-77, 102 S.Ct. at 2658-59.)

The Lewis court compared the entirely land-based fire at the marina to a fire at a mechanic's shop that destroyed cars and buildings *Id.* The *Lewis* court reasoned that:

> The vessel owner's "situation is similar to that of a car owner's, who takes his or her car to the mechanic for repairs and returns to find that a fire, which started either in the car or in the shop, destroyed the car, another car, and part of the garage. **We see no reason to treat appellant's claim to limit its liability for the**

**damage caused here differently than we would the same claim by a car-owner**."

*Lewis Charters, Inc. v. Huckins Yacht Corp.,* 871 F.2d 1046 (11th Cir. 1989) (emphasis added).

The *Lewis* court found that the land-based fire at the marina did not have the requisite relationship to maritime activity and that the claim did not fall within the federal court's maritime jurisdiction. *Id. See also In Re Carter*, 743 F.Supp.2d 103, 109 (D. Conn 2010) (holding that vessels destroyed in a land based fire at a marina did not give rise to admiralty jurisdiction); *In Re Lavender No. 03-60757-CIV-MARTINEZ-KLEIN* (S.D. Fl. 2004) (holding that a fire at a marina which damaged vessels on land did not give rise to admiralty jurisdiction).

The cases have also made clear that "the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson*, 497 U.S. at 364–66, 110 S.Ct. at 2897. Here, the Petitioner claims that the explosion occurred during the Vessel's fuel tank removal process. *See Docket* 1,  at ¶ 8, 9. The employee removing the fuel tank was a land-based worker performing his duties on land. His skills were not that of a seaman, but rather of a carpenter or mechanic. Since the work engaged in by the employee differs in no respect from construction work on land, there is no traditional maritime connection, and there is no showing that the Incident could have a potentially disruptive impact on maritime commerce. No influence on navigation or other related maritime concerns is involved.

The activity giving rise to the incident in this suit can be characterized similarly to that in the *Lewis* case. Described in this way, the activity giving rise to the Petitioner's claim, is not substantially related to traditional maritime activity. Without more than recognizing that the fire involved maritime vessels at MBY's premises that could be related to maritime activity because it services maritime vessels, this case similarly fails the nexus test. No vessels *on the water* were

damaged and the vessels damaged were not in proximity to other vessels either in or serving the flow of commerce.

Like in *Lewis*, the instant case is more akin to a land-based warehouse fire or a fire at a mechanic's shop. The fire did not occur on navigable waters and does not have a substantial relationship to maritime activity. Therefore, admiralty jurisdiction does not apply.

## II.   The Limitation Of Liability Act Does Not Provide An Independent Basis For Admiralty Jurisdiction.

While the Supreme Court in both *Sisson v. Ruby*, 497 U.S. 358 (1990) and *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) noted, *without deciding,* the issue of whether the limitation of liability act provided an independent basis of federal admiralty jurisdiction, *every circuit court* to have considered the issue, has determined that federal admiralty jurisdiction must exist to support a limitation of liability action. *See MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 2012 A.M.C. 485 (2nd Cir. 2011); *Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 773 (9th Cir.1995); *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992) (per curiam); *David Wright Charter Serv. of N.C., Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991) (per curium); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts,* 921 F.2d 775, 779–80 (8th Cir.1990); *Lewis Charters, Inc. v. Huckins Yacht Corp.,* 871 F.2d 1046, 1053–54 (11th Cir.1989); *Complaint of Sisson,* 867 F.2d 341, 349–50 (7th Cir.1989), *rev'd on other grounds sub nom. Sisson,* 497 U.S. at 358, 110 S.Ct. 2892.

As outlined *supra*, the fire and resulting damage did not occur on navigable waters, there was no damages to vessels that were on navigable waters, and, the land based damage did not result from a vessel on navigable waters. Further, while the fire involved maritime vessels and a boatyard, there is not a significant connection to traditional maritime activity. Therefore, there is no admiralty jurisdiction for the claim. As a result, because there is no admiralty jurisdiction, the

Petitioner's Limitation of Liability claim is not supported. *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 2012 A.M.C. 485 (2nd Cir. 2011); *Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 773 (9th Cir.1995); *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992) (per curiam); *David Wright Charter Serv. of N.C., Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991) (per curium); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts,* 921 F.2d 775, 779–80 (8th Cir.1990); *Lewis Charters, Inc. v. Huckins Yacht Corp.,* 871 F.2d 1046, 1053–54 (11th Cir.1989); *Complaint of Sisson,* 867 F.2d 341, 349–50 (7th Cir.1989), *rev'd on other grounds sub nom. Sisson,* 497 U.S. at 358, 110 S.Ct. 2892.

MBY acknowledges the Honorable Judge Young's decision in *In Re Bernstein* where the court, following *stare decisis,* found that the Limitation Act provided and independent basis for Admiralty Jurisdiction. 81 F. Supp. 2d 176 (D. Mass. 1999). However, in Judge Young's detailed decision, he criticizes the holding in *Richardson v. Harmon*, 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911) and acknowledges that all circuit courts of appeal that considered the issue at that time deviated from *Richardson* finding that the Limitation Act does not provide a basis for Admiralty Jurisdiction. Judge Young states:

> Primarily because the Act is "in the nature of a defense ...," every Circuit Court to consider the issue in the last ten years has held that the Act does not provide an independent basis of federal jurisdiction. *See Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 773 (9th Cir.1995); *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 348 n. 6 (11th Cir.1994); *David Wright Charter Serv. of N. Carolina, Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts,* 921 F.2d 775, 779-80 (8th Cir.1990); *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992). Although several of these decisions fail to mention or distinguish *Richardson,* the Ninth Circuit in *Seven Resorts* described *Richardson* as "a historical anomaly that cannot be fairly reconciled with modern admiralty jurisdiction" because the *Richardson* Court "expanded the jurisdictional reach of the Act beyond the then-existing parameters of admiralty jurisdiction in order to effect the amendment's goal of improving the competitive posture of American shipping." *Seven Resorts,* 57 F.3d at 772. In light of the fact that the reach of the Act and admiralty jurisdiction are once again coextensive, the Seventh Circuit essentially discarded *Richardson* as historically flawed. *See also*

> *David Wright Charter,* 925 F.2d at 785 ("Neither *Richardson v. Harmon* nor the Extension of Admiralty Jurisdiction Act purports to provide admiralty jurisdiction for torts involving vessels that are not on navigable waters.").

*In Re Bernstein,* 81 F. Supp. 2d 176, 181 (D. Mass. 1999)

> Judge Young further states:

> …the manifest history of the Act demonstrates its inapplicability to the circumstances of this case, and **the age of *Richardson*, the Supreme Court's arguable disregard for its own holding, and the overwhelming disapproval by the Courts of Appeals presents a compelling rationale for rejecting a theory of independent jurisdiction under the Act**…

*Id.* at 182. (emphasis added).

Despite Judge Young's criticism of the *Richardson* decision, the court followed *stare decises* and held that the Limitation of Liability Act supported and independent basis for admiralty jurisdiction.

The facts of this case are distinguishable from *Bernstein.* In *Bernstein*, the petitioner filed a Limitation of Liability action after a recreational boating accident on land locked Lake Winnisquam in New Hampshire. Here, the explosion and fire occurred entirely on land.

The facts of the instant case are nearly identical to those in *In Re Carter*, 743 F.Supp.2d 103 (D. Conn 2010), where a fire at a boat yard and marina damaged the petitioner's vessel and other boats and property stored on land. In *Carter* the petitioner's vessel may have been the source of the fire. *Id.* Two claimant's moved to dismiss the petitioner's complaint for lack of subject matter jurisdiction. *Id.* The *Carter* court held that the Limitation of Liability Act "does not confer admiralty jurisdiction over petitions seeking limitation of liability based on incidents that occurred entirely on land. *Id.* at 114.

The *Carter* court was faced with a similar issue as Judge Young in *Bernstein.* When the court in *Carter* ruled on the claimants' motions to dismiss it acknowledged that *Richardson v.*

*Harmon,* 222 U.S. 96, 101, 32 S.Ct. 27, 56 L.Ed. 110 (1911) and the subsequent second circuit

case, *The No. 6,* 241 F. 69, 71 (2d Cir.1917), held that "the Limitation Act confers admiralty

jurisdiction independent of 28 U.S.C. § 1333(1) in *some* circumstances." *Id.* at 108. (emphasis in

original). While the *Carter* court acknowledged that it was bound to follow Supreme Court and

Second Circuit decisions, after careful consideration, District Judge Kravitz found that

*Richardson* and *Harmon* were not controlling:

> The Court concludes that *Richardson* and *The No. 6* are not controlling because
> neither the Supreme Court nor the Second Circuit specifically considered whether
> the Limitation Act confers jurisdiction over a petition seeking limitation of
> liability based on an incident that occurred *entirely* on land.

*In Re Carter*, 743 F.Supp.2d 103, 105 (D. Conn 2010) (emphasis in the original).

The *Carter* court dedicated significant analysis to the language of the Limitation Act and

congress' intent in concluding that the Limitation Act does not provide and independent basis for

admiralty jurisdiction and that doing so may extend beyond the court's reach enumerated in the

Constitution. The Second Circuit in *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 2012 A.M.C. 485

(2nd Cir. 2011) relied on the *Carter* court's reasoning when it joined the other circuit courts in

holding that the Limitation Act does not provide an independent basis for admiralty jurisdiction.[1]

---

[1] "In reaching this conclusion, we are aided considerably by the District Court of Connecticut's cogent and well-reasoned recent opinion in *In re Carter,* 743 F.Supp.2d 103 (D.Conn.2010) (Kravitz, J.). As the court observed in *Carter,* the relevant statutory language—"[t]he owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter," 46 U.S.C. § 30511(a)—gives no indication that Congress intended the Limitation Act to constitute a jurisdictional grant. *See id.* at 112 ("When Congress grants subject-matter jurisdiction to federal district courts, it ordinarily does so *explicitly* by using the word 'jurisdiction.' ") (emphasis in original). Instead, on its face, § 30511(a) appears to be intended as granting vessel owners a private right of action to enforce their rights under the Limitation Act in a federal court, assuming that the court otherwise has subject- matter jurisdiction over the controversy. Moreover, as noted by the *Carter* court, there does not appear to be anything in the Limitation Act's legislative history to indicate that Congress intended § 30511(a) as a jurisdictional grant. *See id.* With respect to "the Act's purpose of making United States shipping more competitive world- wide through the limitation of shipping liability," *Seven Resorts,* 57 F.3d at 773, we agree with our sister Circuits that this purpose would not be advanced by construing the Limitation Act as conferring federal jurisdiction beyond the limits set forth in the subsequently-enacted Extension Act, which extended federal admiralty jurisdiction to any incident "caused by a vessel on navigable waters," 46 U.S.C. § 30101(a). Finally, we share the *Carter* court's concern that reading the Limitation Act to confer federal jurisdiction over controversies that do not occur on or over navigable waters "might well exceed the scope of the constitutional grant of admiralty jurisdiction."

The Claimants request this honorable Court to follow the decisions out of the 2nd, 4th, 5th, 7th, 8th, 9th, and 11th Circuits, which have *all* held that the Limitation of Liability act does not, in itself, provide an independent basis for admiralty jurisdiction. Instead, the Limitation Act only applies when there is a separate, independent basis for subject matter jurisdiction. Since there is no such basis here, the Court should dismiss Petitioners' Claim for lack of subject matter jurisdiction.

## <u>CONCLUSION</u>

WHEREFORE, for the forgoing reasons, the Claimants, Mattapoisett Boatyard, Inc., Kaiser Yachts, LLC, and MBY Realty Trust, respectfully request this Honorable Court to Dismiss the Petitioner's Claim for Limitation or Exoneration from Liability for lack of subject matter jurisdiction.

Respectfully submitted,

The Claimants, Mattapoisett Boatyard, Inc., Kaiser Yachts, LLC, and MBY Realty Trust,

By their attorneys,

*/s/ Daniel C. Kelley*
Robert J. Murphy, BBO# 557659
Daniel C. Kelley, BBO# 703555
Francis X. Downey, BBO# 705297
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
rmurphy@holbrookmurphy.com
dkelley@holbrookmurphy.com
jdowney@holbrookmurphy.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on February 13, 2023, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Daniel C. Kelley*
Daniel C. Kelley, BBO# 703555
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
dkelley@holbrookmurphy.com
