UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of<br><br>JAMES R. SILVER, as owner of the M/V SEA-RENITY NOW (O.N. 1212716), a 1963 (2021) Bertram 31 Flybridge Cruiser Sport Fisherman, for Exoneration from or Limitation of Liability.<br><br>JAMES R. SILVER,<br>     Counterclaim Plaintiff,<br>          v.<br>KAISER YACHTS, LLC,<br>MATTAPOISETT BOATYARD, INC.,<br>and MBY REALTY TRUST,<br>     Counterclaim Defendants. | Civil Action No. 1:22-cv-11833-IT |

MEMORANDUM & ORDER

September 5, 2023

TALWANI, D.J.

James Silver's Verified Complaint [Doc. No. 1] seeks to limit his liability for any claims related to an explosion at the Mattapoisett Boatyard in Mattapoisett, Massachusetts, where Silver's boat was being repaired. Pending before the court is the Mattapoisett Boatyard, Inc., Kaiser Yachts, LLC, and MBY Realty Trust's (collectively, "Boatyard") Motion to Dismiss [Doc. No. 53] for lack of subject matter jurisdiction. For the following reasons, the Boatyard's Motion [Doc. No. 53] is DENIED.

## I. Factual Background

In early August 2022, Petitioner James Silver had trouble starting his boat, the M/V SEA-RENITY NOW ("Vessel"). Verified Compl. ¶ 5 [Doc. No. 1]. A week later, Silver had the Vessel towed to the Mattapoisett Boatyard to have the fuel tank replaced. Id. at ¶ 6. On August

19, 2022, a Boatyard employee worked to remove the fuel tank using a power tool. Id. at ¶ 8. During this process, the Vessel exploded, destroying the Vessel and much of the Mattapoisett Boatyard. Id. at ¶ 9.

## II.    Procedural Background

On October 27, 2022, Silver filed a Verified Complaint [Doc. No. 1] asserting admiralty jurisdiction under 28 U.S.C. § 1333 and seeking exoneration or limitation of liability pursuant to the Limitation of Liability Act of 1851 (the "Act"), 46 U.S.C. § 30501, et seq., and Supplemental Rule F of the Federal Rules of Civil Procedure. After the court granted Silver's Motion for Order Directing Issuance of Notice and Restraining Suits [Doc. No. 2], see Order [Doc. No. 6], twenty parties,[1] including the Boatyard, filed Answers [Doc. Nos. 7, 9, 10-25, 33, 36, 61] asserting claims for more than $1.7 million in damages.

The Boatyard contends that the damage for which they submitted a claim was a result of Silver's acts or omissions, and not the acts or omissions of the Boatyard or any other claimant, and that Silver may not limit his liability under the Act. Boatyard Claim & Answer ¶¶ 27-30, 31-33 [Doc. No. 22]. Silver, in turn, counterclaimed that the explosion was caused by the Boatyard, and that the Boatyard was liable for negligence, breach of contract, bailment, breach of warranty, breach of implied workmanlike conduct, indemnification, and contribution. Pl. Answer & Counterclaim 3-12 [Doc. No. 44].

The Boatyard then filed its Motion to Dismiss [Doc. No. 53], seeking dismissal of Silver's Verified Complaint [Doc. No. 1] and his Counterclaim [Doc. No. 44] for lack of subject matter jurisdiction. At oral argument, the Boatyard withdrew its motion to dismiss as to the

---

[1] The filing parties include certain insurance companies filing on behalf of multiple claimants. See, e.g., Commerce Insurance Co. Answer and Notice of Claim [Doc. No. 15].

Counterclaim [Doc. No. 44], and now seeks dismissal only as to the <u>Verified Complaint</u> [Doc. No. 1].

### III.    Standard of Review

Rule 12(b)(1) is "the proper vehicle for challenging a court's subject matter jurisdiction[.]" <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 362–63 (1st Cir. 2001). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. <u>Id.</u> When a decision is made on the pleadings, a court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. <u>Fothergill v. United States</u>, 566 F.3d 248, 251 (1st Cir. 2009). The court may also consider materials extrinsic to the complaint in evaluating a Rule 12(b)(1) motion without converting it to a Rule 56 motion for summary judgment. <u>Dynamic Image Techs., Inc. v. United States</u>, 221 F.3d 34, 37-38 (1st Cir. 2000); <u>Brooks v. Love</u>, 527 F. Supp. 3d 113, 116 (D. Mass. 2021).

### IV.    Discussion

The Boatyard contends that the court must dismiss Silver's <u>Verified Complaint</u> [Doc. No. 1] because the incident occurred on land and exoneration of liability under the Act cannot be asserted absent admiralty jurisdiction. Boatyard Mem. in Supp. of Mot. to Dismiss 1-2 [Doc. No. 54].[2] Silver disputes that the court lacks jurisdiction, asserting that the Limitation of Liability Act itself provides an independent basis for jurisdiction. Pl. Mem. in Opp'n ("Pl. Opp'n") 6-8 [Doc.

---

[2] The Boatyard asserts, and Silver does not dispute, that the Vessel was approximately eighty feet away from the water when it exploded. Decl. of David R. Kaiser in Supp. of Mot. to Dismiss ¶ 13 [Doc. No. 54-1].

No. 62]. He also asserts that the court has admiralty jurisdiction under 28 U.S.C. § 1333 over the Limitation of Liability Act complaint because of the nature of the incident. Id. at 10-12.

A. *Limitation of Liability Act as an Independent Basis for Jurisdiction*

Silver asserts that the Act provides an independent basis for jurisdiction over the damages claims arising from the explosion. For this proposition, Silver relies on Richardson v. Harmon, 222 U.S. 96 (1911). In Richardson, a water-borne barge crashed into a bridge, damaging both bridge and barge. Id. at 100. The barge owners filed a limitation of liability action. Id. The Richardson Court interpreted the Limitation of Liability Act to extend protection to the ship's owner for the damage caused to the bridge: Specifically, the Court held that the Act covered "all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime." Id. Silver asserts that Richardson's holding establishes an independent basis for admiralty jurisdiction that applies even for torts involving damage on land caused by a vessel also located on land. Pl. Opp'n 8 [Doc. No. 62].

But Silver's reading of Richardson is overbroad. Richardson held the Limitation of Liability Act applied to damage caused on land by a vessel *on navigable water*. 222 U.S. at 106. In 1948, Congress codified Richardson in the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 30101, explicitly extending admiralty jurisdiction to damage on land caused by a vessel on navigable waters. 151 Cong. Rec. H10247-01. Richardson therefore simply "anticipated by judicial decision a maritime policy that Congress recognized in the Extension of Admiralty Jurisdiction Act, [46 U.S.C. § 30101.]" David Wright Charter Serv. of North Carolina, Inc. v. Wright, 925 F.2d 783, 785 (4th Cir. 1991). Richardson and the Extension of Admiralty Jurisdiction Act thus both support the extension of admiralty jurisdiction to cover damage on

land when caused by a vessel on navigable waters, but not the further extension of admiralty jurisdiction to cover damage caused by a vessel on land sought by Silver here.

This conclusion is bolstered by the Supreme Court's decisions in <u>Sisson v. Ruby</u>, 497 U.S. 358 (1990), and <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock. Co.</u>, 513 U.S. 527 (1995). In both cases, the Court explicitly declined to consider the parties' argument that the Limitation of Liability Act provided an independent basis for exercising jurisdiction, treating the issue as an open question not answered by <u>Richardson</u>. <u>Sisson</u>, 497 U.S. at 359 n.1; <u>Jerome B. Grubart</u>, 513 U.S. at 543 n.5. Instead, the Supreme Court relied exclusively on admiralty jurisdiction under 28 U.S.C. § 1333 as the basis for hearing the cases. In <u>Sisson</u>, the Supreme Court found admiralty jurisdiction under 28 U.S.C. § 1333 when a fire ignited in a vessel's laundry room and spread to marina buildings and other vessels. 497 U.S. at 367. Similarly, in <u>Jerome B. Grubart</u>, the Court held that 28 U.S.C. § 1333 supported admiralty jurisdiction when a barge installing pilings collapsed a freight tunnel running under the river. 513 U.S. at 548. In both cases, the Court explicitly declined to consider the parties' argument that the Act provided an independent basis for admiralty jurisdiction, treating the issue as an open question not answered by <u>Richardson</u>. <u>Sisson</u>, 497 U.S. at 359 n.1; <u>Jerome B. Grubart</u>, 513 U.S. at 543 n.5.

Finally, every Circuit court to have considered the issue has determined that the Act does not independently provide jurisdiction over vessel-related torts where admiralty jurisdiction is lacking. See <u>MLC Fishing, Inc. v. Velez</u>, 667 F.3d 140, 142-43 (2d Cir. 2011); <u>David Wright Charter Serv.</u>, 925 F.2d at 784-85; <u>Guillory v. Outboard Motor Corp.</u>, 956 F.2d 114, 115 (5th Cir. 1992); <u>Compl. of Sisson</u>, 867 F.2d 341, 349-50 (7th Cir. 1989), <u>rev'd on other grounds sub nom. Sisson</u>, 497 U.S. 358 (1990); <u>Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts</u>, 921

F.2d 775, 779-80 (8th Cir. 1990); <u>Seven Resorts, Inc. v. Cantlen</u>, 57 F.3d 771, 772-73 (9th Cir.

1995); <u>Lewis Charters, Inc. v. Huckins Yacht Corp.</u>, 871 F.2d 1046, 1053-54 (11th Cir. 1989).

If the court lacks admiralty jurisdiction, the Act does not protect the vessel owner. <u>Three</u>

<u>Buoys Houseboat Vacations U.S.A. Ltd.</u>, 921 F.2d at 780 ("[T]he [Limitation of Liability] Act's

reach is only coextensive with that of admiralty jurisdiction. Where admiralty jurisdiction

fails…, so does the reach of the Act. Thus, even if the [vessel owner] discovered an independent

basis for subject matter jurisdiction, it still would not be afforded the protection of the Act….");

<u>David Wright Charter Serv.</u>, 925 F.2d at 784-85 ("Because the district court lacked admiralty

jurisdiction, it properly dismissed [the vessel owner's] limitation complaint."); <u>Seven Resorts,</u>

<u>Inc.</u>, 57 F.3d at 772-73 ("[T]he jurisdiction conferred by the Act remains coextensive with that of

modern admiralty and maritime jurisdiction.").

In sum, the Limitation of Liability Act, 46 U.S.C. § 30501, <u>et seq.</u>, does not provide an

independent basis for jurisdiction in the absence of admiralty jurisdiction under 28 U.S.C.

§ 1333. As a result, Silver's claims under the Limitation of Liability Act can only be heard if this

court has admiralty jurisdiction over the case for reasons other than the Limitation of Liability

Act.

The court turns next to determine whether it has admiralty jurisdiction over the

Boatyard's claims for which Plaintiff is seeking a limitation of liability.

*B.  Admiralty Jurisdiction*

In examining whether the court has admiralty jurisdiction under 28 U.S.C. § 1333 over

the Boatyard's claims, the court must determine (1) "whether the tort occurred on navigable

water or whether injury suffered on land was caused by a vessel on navigable water" (the locality

test), and (2) whether the incident involved has a "potentially disruptive impact on maritime

commerce," or "shows a substantial relationship to traditional maritime activity" (the nexus test). Jerome B. Grubart, 513 U.S. at 537; accord Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997). At the outset, a plaintiff need only allege "a nonfrivolous assertion of jurisdictional elements[.]" Jerome B. Grubart, 513 U.S. at 537.

As relevant here, where the injury occurred on land, the court must examine whether the underlying tort nonetheless occurred on navigable water. See id. As both parties concede, the causation of the Vessel's explosion is presently unknown. However, in its Claim and Answer [Doc. No. 22], the Boatyard alleges the explosion was the result of the Vessel's "unseaworthy" condition. Unseaworthiness is a maritime tort where a ship, or some aspect thereof, is not reasonably fit for the thing for which it is to be used. See Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 214 (1963). Here, the Boatyard's allegation that Silver failed to maintain the Vessel in a seaworthy condition plausibly involves a tort occurring on navigable waters. Therefore, so long as the Boatyard is alleging tortious conduct of a maritime nature, the pleadings are sufficient at this stage to satisfy the locality test.

The cases cited by the Boatyard with respect to locality do not compel a different result at this stage. See, e.g., David Wright Charter Serv., 925 F.2d at 784 (holding no limitation of liability action in explosion of vessel stored on blocks on land for five months where claimants raised "only [] a tort that occurred on land"); Ghiazza v. Anchorage Marina, Inc., 2020 WL 4340746, at *3 (S.D.N.Y. July 27, 2020) ("[W]here a tort—even one involving a vessel—occurs solely on land, the first prong cannot be satisfied and there is no maritime jurisdiction.").

As to the second factor articulated in Jerome B. Grubart, the nexus test, there is no dispute that the use and repair of the Vessel has a substantial relationship with traditional maritime activity. Accordingly, the nexus test has been satisfied and the Boatyard's Motion to

Dismiss [Doc. No. 53] for want of subject matter jurisdiction fails.

## V.    Conclusion

For the foregoing reasons, the Boatyard's Motion [Doc. No. 53] to dismiss for lack of subject matter is DENIED.

IT IS SO ORDERED

September 5, 2023                                                    /s/ Indira Talwani
                                                                              United States District Judge